**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk (State Bar No. 320783)
Julian C. Diamond (*pro hac vice* forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-mail: fklorczyk@@bursor.com
        jdiamond@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER JACKSON and APRIL DUE, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| WM. BOLTHOUSE FARMS, INC., | |
| Defendant. | |

Plaintiffs Jennifer Jackson and April Due ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Wm. Bolthouse Farms, Inc. ("Bolthouse" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on their personal knowledge.

## NATURE OF THE ACTION

1.      Defendant formulates, manufactures, advertises, and sells multiple types of juice products (the "Products")[1] throughout the United States, including in California and New York. Defendant markets its Products in a systematically misleading manner by misrepresenting that their Products do not contain preservatives, or/alternatively, artificial preservatives.

2.      Defendant clearly lists "No Preservatives" or, alternatively, "No Artificial Preservatives" on Products' labels, capitalizing on the preference of health-conscious consumers to purchase foods that are free from preservatives and artificial ingredients. However, Defendant's Products contain "ascorbic acid"—a well-known artificial preservative used in food products.

3.       As a result of its deceptive conduct, Defendant violates state consumer protection statutes and has been unjustly enriched at the expense of consumers.

4.      Plaintiffs purchased Defendant's Products and, on behalf of themselves and similarly situated purchasers, assert claims for violations of California Unfair Competition Law, Cal. Business & Professions Code § 17200, et seq., New York General Business Law § 349, et seq., and New York General Business Law § 350, et seq., as well as for unjust enrichment and breach of express warranty.

---

[1] The Products encompass all of Defendant's products that are advertised as containing "No Preservatives" and/or "No Artificial Preservatives," but contain ascorbic acid, including, but not limited to: Daily Greens; Strawberry Banana; Blue Goodness®; Golden Goodness; Green Goodness®; Red Goodness®; Berry Superfood Boost; Mango Cherry C-Boost®; Pineapple Kale Ginger Boost; Pineapple Carrot Orange; Peach Carrot Mango; Grapefruit Carrot Orange; Mocha Cappuccino; Vanilla Chai; Protein Plus® Nut Butter Blueberry Vanilla; Protein Plus® Chocolate Peanut Butter Nut Butter; Protein Plus® Chocolate; Protein Plus® Coffee; Protein Plus® Dutch Chocolate Banana; Protein Plus® Strawberry; Protein Plus® Vanilla Bean.

**JURISDICTION AND VENUE**

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

6.     This Court has personal jurisdiction over Defendant Wm. Bolthouse Farms, Inc. ("Defendant") because Defendant is headquartered in California.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because a substantial portion of the events giving rise to this cause of action occurred here.

**PARTIES**

8.     Plaintiff Jennifer Jackson is a citizen of California who resides in San Francisco, California.  Ms. Jackson purchased the Product for her personal use at various times during the applicable statute of limitations.  Most recently, in or around March 2022, Ms. Jackson purchased a "Green Goodness" Bolthouse juice bottle from Amazon for $6.49.  In purchasing the Product, Ms. Jackson relied on Defendant's false, misleading, and deceptive marketing of the Product as containing "No Preservatives."  Ms. Jackson understood that "No Preservatives" meant that the Product did not contain any preservatives, but in fact the Product she purchased did contain ascorbic acid, a preservative.  Had Ms. Jackson known that the "No Preservatives" representation was false and misleading, she would not have purchased the Product or would have only been willing to purchase the Product at a lesser price.

9.     Plaintiff April Due is a citizen of New York who resides in Wheatley Heights, New York.  Ms. Due purchased the Product for her personal use at various times during the applicable statute of limitations.  Most recently, in or around July 2023, Ms. Due purchased a "Green Goodness" Bolthouse juice bottle from a Stop & Shop in Suffolk County, New York for approximately $7.  In purchasing the Product, Ms. Due relied on Defendant's false, misleading, and deceptive marketing of the Product as containing "No Preservatives."  Ms. Due understood that "No Preservatives" meant that the Product did not contain any preservatives, but in fact the Product

she purchased did contain ascorbic acid, a preservative.  Had Ms. Due known that the "No Preservatives" representation was false and misleading, she would not have purchased the Product or would have only been willing to purchase the Product at a lesser price.

10.    Defendant Wm. Bolthouse Farms, Inc., is a corporation organized under the laws of Michigan with its headquarters at 7200 East Brundage Lane, Bakersfield, CA 93307 United States.

## GENERAL ALLEGATIONS

11.    **Defendant Misrepresents the Products**.  Defendant advertises and displays on the side of each of the Products' that it contains "No Preservatives," or alternatively, "No Artificial Preservatives," thereby misleading reasonable consumers into believing that the Products are free from preservatives and artificial ingredients.  However, the Products contain ascorbic acid, a well-known and well-documented artificial preservative.  Defendant's most recent labeling of the Products, along with their ingredient panels, are depicted below.  The first set of images were visible to Ms. Jackson when she purchased the Product on Amazon; these labels indicate that the Product contains "No Preservatives."  The second set of images show how the Product appeared to Ms. Due when she purchased the Product at Food Bazaar; these labels indicate that the Product contains "No Preservatives," or alternatively, "No Artificial Preservatives."  In either event, both sets of labels clearly state that the Product contains ascorbic acid.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





12.    **Ascorbic Acid is a Preservative**.  The FDA defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."  21 C.F.R. §101.22(a)(5).

13.    Ascorbic acid is a chemical form of vitamin C, which, pursuant to FDA regulations, is commonly used as a food preservative.  In fact, the FDA lists "ascorbic acid" under the heading "Subpart D - Chemical Preservatives."  21 C.F.R. § 182.3013.

14.    Ascorbic acid functions as an antioxidant that helps prevent microbial growth and oxidation in food products, thereby preserving their color and freshness.  Although Defendant identifies ascorbic acid as a source of vitamin C, Defendant adds it for its preservative qualities as well.

15.    The FDA regulates the use of ascorbic acid in the formulation of wine and juice "to prevent oxidation of color and flavor components of juice," and it "may be added to grapes, other fruit (including berries), and other primary wine making materials or to the juice of such materials."  27 C.F.R. § 24.246.

16.    Based on industry standards, Defendant added ascorbic acid to the Products to prevent their "oxidation of color and flavor"—something which happens so often to these juice products that it prompted the FDA to promulgate the pertinent preservatives regulations set forth above.  *Id.*

17.    On its website, the FDA also classifies and identifies ascorbic acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, as well as provides examples of how ascorbic acid is used as a preservative in beverages and other products.[2]

18.    The FDA's view of this matter is further bolstered by a Warning Letter that it sent to Chiquita Brands International, Inc., indicating that Chiquita's "Pineapple Bites" products were misbranded within the meaning of section 403(k) of the Food, Drug, and Cosmetic Act, 21 U.S.C.

---

[2] https://public4.pagefreezer.com/browse/FDA/31-12-2022T07:59/https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors (last accessed July 14, 2023).

§ 343(k), because "they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions."[3]

19.     The USDA has also recognized that "[a]scorbic acid is most commonly used as a preservative to prevent enzymatic browning reactions that occur during processing and post-processing storage."[4]  Based on the foregoing, Defendant's use of ascorbic acid in its Products renders its "No Preservatives," and alternatively, "No Artificial Preservatives" representations false and misleading.

20.     **Subjective Intent of Use is Immaterial**.  Ascorbic acid functions as a preservative in the Products, and this is true regardless of Defendant's subjective purpose or intent for adding it to the Products, such as to impart flavor.[5]

21.     Even if the Products' ascorbic acid does not, in fact, function as a preservative in the Products, it nonetheless qualifies as a preservative given that it has the capacity or tendency to do so.  See 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, tends to prevent or retard deterioration"); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or has the power of preserving");[6] Oxford English Dictionary (defining "preservative" as "[t]ending to preserve or capable of preserving").[7]

---

[3] FDA, Warning Letter to Chiquita Brands International, Inc. and Fresh Express Incorporated (Oct. 6, 2010), available at http://web.archive.org/web/20101109083452/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm228663.htm (last accessed July 5, 2023).

[4] U.S. Dep't of Agric., USDA National Organic Program, *Ascorbic Acid* 3 (2019), https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf.

[5] L. Somogyi, *Chapter 13: Direct Food Additives in Fruit Processing,* in PROCESSING FRUITS: SCI. & TECH., at 302 (D. Barrett et al. eds., CRC Press 2d ed. 2004); J. deMan, *Chapter 11: Additives and Contaminants*, in PRINCIPLES OF FOOD CHEMISTRY, at 438 (AVI Publishing Co., Inc. 3d ed. 1999) ("Acids as food additives serve a dual purpose, as acidulants and as preservatives").

[6] *Preservative*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last accessed July 5, 2023).

[7] *Preservative*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=preservative (last accessed July 6, 2023).

22.      **Products' Ascorbic Acid is Artificially Synthesized**.  The ascorbic acid contained in the Products is commercially produced, manufactured, and the result of extensive chemical processing.  In fact, the USDA found that "all commercial ascorbic acid [is] synthetically derived."[8]  The reason for this is that, "[w]hile ascorbic acid is naturally produced … its reactive nature makes isolation of the substance from natural sources challenging, which has resulted in all commercial ascorbic acid being synthetically derived."[9]  Defendant's Products contain commercial ascorbic acid; therefore, the ascorbic acid in question is artificial.

23.      **Defendant Exploits Consumer Demand for Preservative-Free Food**.  By representing that the Products contain "No Preservatives," or alternatively, "No Artificial Preservatives," Defendant seeks to capitalize on consumers' preference for products with no preservatives and no artificial ingredients.  Indeed, "foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods.  In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent).  Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[10]

24.      According to another study, when consumers were asked to choose a product that was the closest to their understanding of what "natural" means on product labels, they often chose products with "No Preservatives" labels.[11]

---

[8] U.S. Dep't of Agric., USDA National Organic Program, *Ascorbic Acid* 3 (2019), https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf.

[9] *Id.*

[10] *See Free-From Food Trends-US-May 2015*, Mintel https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last accessed July 5, 2024).

[11] Sajida Rahman, et al., Assessing consumers' understanding of the term "Natural" on food labeling, Journal of Food Science, Vol. 85, No. 6, 1891-1896 (2020).

25.     The global sale of healthy food products is estimated to be $4 trillion dollars and is forecasted to reach $7 trillion by 2025.[12]  Based on the foregoing, consumers are willing to purchase and pay a premium for healthy non-preservative food items like the Products.

26.     Defendant's misleading and deceptive practices proximately caused harm to Plaintiffs and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct.

## CLASS ACTION ALLEGATIONS

27.     Plaintiffs seek to represent a class defined as all persons in the United States who during the maximum period of time permitted by law, purchased Defendant's Products primarily for personal, family or household consumption, and not for resale (the "Nationwide Class").

28.     Plaintiff Jackson seeks to represent a subclass defined as all Class members who reside in California who purchased the Products (the "California Subclass").

29.     Plaintiff Due seeks to represent a subclass defined as all Class members who reside in New York who purchased the Products (the "New York Subclass") (collectively with the California Subclass and the Nationwide Class, the "Classes").

30.     Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the hundreds of thousands.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

31.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to: the true nature and presence of artificial preservatives in the Products; whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive; whether Plaintiffs and the members of the Classes have suffered

---

[12] Global Wellness Institute, *The Global Wellness Economy Stands at $4.4 Trillion Amidst the Disruptions of COVID-19; Is Forecast to Reach $7 Trillion by 2025*, https://www.hospitalitynet.org/news/4108643.html (last accessed July 6, 2023).

damages as a result of Defendant's actions and the amount thereof; whether Plaintiffs and the members of the Classes are entitled to statutory damages; and whether Plaintiffs and the members of the Classes are entitled to attorneys' fees and costs.

32.    The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs were exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

33.    Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

34.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**CAUSES OF ACTION**

**COUNT I**
**Violation of California Unfair Competition Law,**
**Cal. Business & Professions Code § 17200, et seq (UCL)**
**(On behalf of the Nationwide Class and the California Subclass)**

35.    Plaintiffs reallege the foregoing paragraphs and incorporate them as if fully set forth herein.

36.    At all relevant times, the UCL was in full force and effect.

37.     The UCL prohibits the use of "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code §17200).

38.     Section 17203 of the UCL empowers the Court to enjoin any conduct that violates the UCL and "make such orders or judgments, including the appointment of a receiver, as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

39.     Plaintiffs have "suffered injury in fact and [have] lost money or property as a result of the unfair competition" as complained of herein. Bus & Prof. Code §17204. Plaintiffs have paid money for Defendant's products that contained ascorbic acid and which were "misbranded." As such, the products could not legally be sold in interstate commerce. The monies that Plaintiffs and the class members paid for the products resulted from Defendant's unfair competition, and Plaintiffs and the class members are entitled to an order restoring those monies to them and an order enjoining Defendant from selling ascorbic acid containing products under its misleading label. Additionally, even if Defendant's Products could have legally been sold in interstate commerce, Plaintiffs overpaid compared to what they would have if the same products did not contain ascorbic acid.

40.     Defendant's conduct violates the unfair practices prong of the UCL. Defendant's conduct violates both California and federal public policy, as shown by their respective prohibitions on introducing misbranded products into interstate commerce. The conduct is also anticompetitive and puts competitors who follow the law at a disadvantage. Defendant's conduct suppresses competition and has a negative impact on the marketplace, decreasing consumer choice and obfuscating the nutritional and safety profile of consumers' products. Further, Defendant's conduct causes significant aggregate harm to consumers, causing them to overpay.

41.     Defendant's violations of the UCL entitle Plaintiffs and the class members to injunctive relief and full restitution.

42.     Plaintiffs have no adequate remedy at law for this claim. There is no commensurate legal remedy for Plaintiff's requested relief under this count. Alternatively, legal remedies available to Plaintiffs are inadequate because they are not "equally prompt and certain and in other

ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also U.S. v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("the 'mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief"); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future").  Furthermore:

    (a)   To the extent damages are available here, damages are not equally certain as restitution because the standard that governs ordering restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.

    (b)   Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiffs seek such relief here.

    (c)   Legal claims for damages are not equally certain as restitution because claims under the UCL and unjust enrichment entail few elements.

43.    Plaintiffs also lack an adequate remedy at law to prevent future harm.

**COUNT II**
**Violation of New York General Business Law,**
**New York General Business Law § 349, et seq.**
**(On behalf of the New York Subclass)**

44.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

45.    Plaintiff Due brings this cause of action pursuant to New York General Business Law ("GBL"), Section 349, et seq., on her own behalf and on behalf of the New York Subclass.

46.     New York General Business Law Section 349, et seq., declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

47.     Defendant, in its advertising and packaging of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the "No Preservatives," or alternatively, "No Artificial Preservatives" representation—despite the fact the Products are made with ascorbic acid, a well-established artificial preservative.  Such claims and omissions appear on the label and packaging of the Products, which are sold at retail stores throughout New York, the United States, and over the internet.

48.     Defendant used the "No Preservatives," or alternatively, "No Artificial Preservatives" representation with the intent to sell the Products to consumers, including to Plaintiff Due as well as the New York Subclass.  Defendant knew or should have known of its falsity.  The "No Preservatives," or alternatively, "No Artificial Preservatives" representation is likely to deceive consumers into purchasing the Products because it is material to the average, ordinary, and reasonable consumer.  Defendant knew consumers would purchase the Products and/or pay more for them under the false – but reasonable – belief that the Products do not contain any artificial preservatives when they actually do.  By advertising that the Products contain "No Preservatives," or alternatively, "No Artificial Preservatives" on the product label and throughout its deceptive marketing, Defendant proves that a "No Preservatives," or alternatively, "No Artificial Preservatives" representation is material to consumers.  As a result of its deceptive acts and practices, Defendant has sold millions of Products to unsuspecting consumers across the United States and within New York.  If Defendant had advertised its Products truthfully and in a non-misleading fashion, Plaintiff Due and other class members would not have purchased the Products or would have paid less for them.

49.     Defendant's false and deceptive labeling and advertising of the Products constitute a deceptive act and practice in the conduct of business, thereby violating N.Y. GBL § 349(a). Plaintiff Due and the New York Subclass have accordingly been damaged.

50.     Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising and on Defendant's packaging or labeling because the Products are made with the artificial preservative ascorbic acid.  Defendant knows and knew that the Products are not truly free of preservatives and/or artificial preservatives, yet Defendant intentionally advertises and markets the Products to deceive reasonable consumers into believing that the Products contain no preservatives and/or artificial preservatives.

51.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as containing "No Preservatives," or alternatively, "No Artificial Preservatives," when in fact they contain the well-documented artificial preservative ascorbic acid, is misleading in a material way in that it, inter alia, induced Plaintiff Due and the New York Subclass to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have.  Defendant made these untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

52.     Plaintiff Due and the New York Subclass reasonably relied on the material and false "No Preservatives," or alternatively, "No Artificial Preservatives" representation to their detriment in that they purchased the Products.

53.     Plaintiff Due and the New York Subclass paid a premium for Products that—contrary to Defendant's representations—were not free of artificial preservatives. Accordingly, Plaintiff Due and New York Subclass members received less than what they bargained and/or paid for.

54.     Plaintiff Due and the New York Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct—namely, Plaintiff Due and New York Subclass members lost the premium they paid for (i.e., that Products are free of artificial preservatives).

55.     Defendant's conduct as alleged herein constitutes recurring, unlawful deceptive acts and practices in violation of N.Y. GBL § 349, and as such, Plaintiff Due and the New York Subclass seek monetary damages and the entry of preliminary and permanent injunctive relief, including without limitation, public injunctive relief, against Defendant, enjoining them from

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                              14

inaccurately describing, labeling, marketing, and promoting the Products.

56.    All of the consumer-oriented conduct alleged herein occurred and continues to occur in Defendant's businesses.  Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

57.    Plaintiff Due and the New York Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of labeling and advertising the sale and use of the Products as alleged herein.  Likewise, Plaintiff Due and New York Subclass members seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

58.    As a direct and proximate result of Defendant's misconduct in violation of GBL § 349, Plaintiff Due and New York Subclass members were harmed when they paid a premium for the Products.  Further, Plaintiff Due and New York Subclass members have suffered and continue to suffer economic losses and other damages including, but not limited to, the premium paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.  Accordingly, Plaintiff Due seeks a monetary award for Defendant's violation of GBL § 349 in the form of damages to compensate Plaintiff Due and the New York Subclass for said monies. Plaintiff Due seeks to recover her actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and attorneys' fees, as well as injunctive relief, including without limitation, public injunctive relief, to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

59.    Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).  Absent an order enjoining Defendant's unlawful conduct as described herein, Plaintiff Due and New York Subclass members will be unable to rely on the representations on the Products' labels, and the general public will be subjected to a persistent threat of future harm.

<u>**COUNT III**</u>
**Violation of New York General Business Law § 350, *et seq.***
**(On behalf of the New York Subclass)**

60.    Plaintiffs repeat and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

61.    Plaintiff Due brings this cause of action pursuant to Section 350, et seq., New York General Business Law, on her own behalf and on behalf of the New York Subclass.

62.    New York General Business Law Section 350 declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

63.    GBL § 350-a(1) provides, in part, as follows:

> The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. . .

64.    Defendant's labeling, packaging, and advertising contain untrue and materially misleading statements concerning the Products inasmuch as they misrepresent that the Products contain "No Preservatives," or alternatively, "No Artificial Preservatives," when they actually contain the artificial preservative ascorbic acid.

65.    The "No Preservatives," or alternatively, "No Artificial Preservatives" misrepresentation is material because consumers prefer foods that are free of preservatives and/or artificial preservatives, and the misrepresentation is likely to mislead reasonable consumers into purchasing the Products.

66.    Plaintiff Due and the New York Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct when they paid a premium for Products that are free of artificial preservatives and received Products that contained the artificial preservative ascorbic acid.

67.    Plaintiff Due and the New York Subclass relied upon the labeling, packaging, and advertising of, and paid a premium for, the Products which—contrary to Defendant's representations—were not free of artificial preservatives.  Accordingly, Plaintiff Due and Subclass members received less than what they bargained and/or paid for.

68.    Defendant's labeling and advertising as alleged herein was specifically designed to induce—and did, indeed, induce—reasonable consumers, like Plaintiff Due and Subclass members, to purchase the Products.

69.    Plaintiff Due and the New York Subclass reasonably relied on the material and false "No Preservatives," or alternatively, "No Artificial Preservatives" representation to their detriment in that they purchased the Products.

70.    Defendant violated GBL § 350 when it labeled and advertised the Products in an unfair, deceptive, untrue, and materially misleading way and disseminated these misrepresentations to the public through the Products' labeling, packaging, and advertising.

71.    Defendant's consumer-oriented conduct as alleged herein constitutes recurring, unlawful false advertising in violation of N.Y. GBL § 350.

72.    As a direct and proximate result of Defendant's misconduct in violation of GBL § 350, Plaintiff Due and the New York Subclass were harmed when they paid a premium for the Products based on Defendant's misrepresentations.  Further, Plaintiff Due and the New York Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.  Accordingly, Plaintiff Due seeks a monetary award for Defendant's violation of GBL § 350 in the form of damages to compensate Plaintiff Due and the Subclass for said monies.  Plaintiff Due seeks to recover her actual damages or five hundred (500) dollars, whichever is greater, three times actual damages, and attorneys' fees, as well as injunctive relief, including without limitation, public injunctive relief, to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

73.    Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of

which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Absent an order enjoining Defendant's unlawful conduct as described herein, Plaintiff Due and Subclass members will be unable to rely on the representations on the Products' labels, and the general public will be subject to a persistent threat of future harm.

**COUNT IV**
**Unjust Enrichment or Restitution**
**(On behalf of the Nationwide Class)**

74. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

75. Plaintiffs bring this claim pursuant to California law.

76. Plaintiffs bring this claim in the alternative.

77. Plaintiffs bring this claim individually and on behalf of the Nationwide Class against Defendant.

78. Plaintiffs and class members conferred benefits on Defendant by paying money to Defendant for the purchase of the Products.

79. Defendant has knowledge of such benefits.

80. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchase of the Products. Retention of those monies under these circumstances is unjust and inequitable because Defendant misrepresented that the Products contain "No Preservatives," or alternatively, "No Artificial Preservatives," when in fact it contains ascorbic acid, a well-documented artificial preservative.

81. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the class members for their unjust enrichment, as ordered by the Court.

82. Plaintiffs have no adequate remedy at law for this claim. There is no commensurate legal remedy for Plaintiff's requested relief under this count. Alternatively, legal remedies available to Plaintiffs are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also U.S. v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("the 'mere existence' of a

possible legal remedy is not sufficient to warrant denial of equitable relief"); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future").  Furthermore:

> (a)    To the extent damages are available here, damages are not equally certain as restitution because the standard that governs ordering restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.

> (b)    Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiffs seek such relief here.

> (c)    Legal claims for damages are not equally certain as restitution because claims under the UCL and unjust enrichment entail few elements.

83.    Plaintiffs also lack an adequate remedy at law to prevent future harm.

<u>**COUNT V**</u>
**Violation of California's False Advertising Law**
**California Business and Professions Code §§ 17500, *et seq.***
**(On behalf of the California Subclass)**

84.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

85.    Plaintiff Jackson brings this claim individually and on behalf of the members of the California Subclass against Defendant.

86.    This count is brought under the laws of the State of California.

87.    Defendant has engaged in false or misleading advertising in violation of California's statutory False Advertising Law ("FAL").

88.    Defendant's conduct as described herein is misleading, and/or has a capacity, likelihood or tendency to deceive reasonable consumers.

89.    Defendant, with intent directly or indirectly to dispose of personal property or to perform services, or to induce the public to enter into any obligation relating thereto, makes, disseminates, has made or disseminated, causes to be made or disseminated, and/or has caused to be made or disseminated, before the public in California, in newspaper or other publication, or other advertising device, or by public outcry or by proclamation, or in any other manner or means, including over the internet, statements concerning that personal property or those services, and/or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which are untrue or misleading and which are known (or which by the exercise of reasonable care should be known) to be untrue or misleading.

90.    Defendant made, disseminated, makes, disseminates, caused to be made or disseminated and/or causes to be made or disseminated any statements concerning the disposition of personal property or the performance of services, and/or concerning any circumstance or matter of fact connected with such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, as advertised.

91.    With respect to omissions, Defendant at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendant had exclusive knowledge of material information that was not known to Plaintiff Jackson and the California Subclass; (b) Defendant concealed material information from Plaintiff Jackson and the California Subclass; and/or (c) Defendant made partial representations which were false and misleading absent the omitted information.

92.    Defendant committed such violations of the FAL with actual knowledge that its advertising was misleading, or Defendant, in the exercise of reasonable care, should have known that its advertising was misleading.

93.     Plaintiff Jackson and the California Subclass reasonably relied on Defendant's representations and/or omissions made in violation of the FAL.

94.     As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent conduct, Plaintiff Jackson and each member of the California Subclass suffered injury-in-fact and lost money.

95.     But for Defendant's deceptive conduct and omissions of material facts, Plaintiff Jackson and the California Subclass would not have purchased the Products and/or would have purchased the Product from one of Defendant's competitors instead.

96.     Defendant should be ordered to disgorge or make restitution of all monies improperly accepted, received, or retained.

97.     Defendant's conduct has caused substantial injury to Plaintiff Jackson, members of the California Subclass, and the public. Defendant's conduct is ongoing and will continue and recur absent a permanent injunction.  Accordingly, Plaintiff Jackson seeks an order enjoining Defendant from committing such violations of the FAL.  Plaintiff Jackson further seeks an order granting restitution to Plaintiff Jackson and the California Subclass in an amount to be proven at trial. Plaintiff Jackson further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

98.     Plaintiff Jackson, on behalf of herself and the California Subclass, seeks injunctive relief to require Defendant to: (1) provide notice to every class member that the Products she purchased are not suited for its intended purpose; and (2) either provide a refund to Plaintiff and the California Subclass for their Products in an amount to be determined at trial.

99.     Absent injunctive relief, Defendant will continue to injure Plaintiff Jackson and the California Subclass members. Even if such conduct were to cease, it is behavior that is capable of repetition or reoccurrence by Defendant yet evades review.

100.     In order to prevent injury to the general public, Plaintiff Jackson, in her individual capacity, seeks a public injunction requiring Defendant to stop advertising, and to instruct its resellers to stop advertising, any Product that contains ascorbic acid as containing "No Preservatives."

101.    Plaintiff Jackson and the general public lack an adequate remedy at law to remedy and/or mitigate the totality of the injuries and misconduct described herein.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs Jennifer Jackson and April Due, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)    For an order certifying the Nationwide Class, the California Subclass, and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as representatives of the Nationwide Class, the California Subclass, and the New York Subclass, and naming Plaintiffs' attorneys as Class Counsel to represent the Nationwide Class, California Subclass, and the New York Subclass;

(b)    For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(c)    For an order finding in favor of Plaintiffs, the Nationwide Class, the California Subclass, and the New York Subclass on all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(h)    For an order awarding Plaintiffs, the California Subclass, and the New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated:  September 21, 2023

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    */s/ Frederick J. Klorczyk III*
         Frederick J. Klorczyk III

Frederick J. Klorczyk III (SBN 320783)
Julian C. Diamond (*pro hac vice* forthcoming)
1330 Avenue of the Americas, 32nd Fl.
New York, New York 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail:  fklorczyk@bursor.com
              jdiamond@bursor.com

*Attorneys for Plaintiffs*